UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| KELLY MARIE CLOVER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 16-cv-06565-RMI<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 28 |

Plaintiff, Kelly Marie Clover, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for supplemental security income under Title XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Docs. 6 & 7), and both parties have moved for summary judgment (Docs. 21 & 28). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

Plaintiff's most recent application to the Commissioner, filed on November 27, 2012, was for supplemental security income with an alleged disability onset date of August 27, 2011. (Doc. 13, Administrative Record "AR" at 24). Plaintiff's most recent application resulted in an adverse ALJ decision dated May 15, 2015. (*See* Doc. 21 at 2; AR at 34). Previously, Plaintiff had unsuccessfully applied for benefits under Title II in 2004, under Title XVI in 2005, and under Titles II and XVI in 2008, 2009, and 2011. (*See* AR at 24-45).

## SUMMARY OF THE MEDICAL EVIDENCE

*Mental Impairments:*

Plaintiff alleges that she suffers from the following mental impairments: schizoaffective disorder (depressive type), and deficits in cognitive functioning. (*See* Doc. 21 at 3). As to the alleged deficits in cognitive functioning, on April 30, 2012, Annie Khalifeh, Psy.D., conducted a consultative examination of Plaintiff on behalf of the California Department of Social Services. (AR at 291). Dr. Khalifeh noted Plaintiff's longitudinal history as including childhood problems such repeating several grades in elementary school; needing special education classes for English; and eventually completing a two-year associate degree but taking more than 12 years to do so. (*Id.*). During the course of this examination, Plaintiff was subjected to a battery of four widely used and clinically accepted examinations that measure cognitive functioning. (*Id.* at 291-93).

Dr. Khalifeh's mental status findings noted at the outset that the "[t]est results are considered to be a valid representation of claimant's current psychological functioning." (*Id.* at 292). The first of the four tests conducted was the WAIS-IV, which is itself a battery of cognitive

tasks that measures ability in four areas: verbal comprehension, perceptual reasoning, working memory, and processing speed. (*Id*. at 293). The WAIS-IV is scored in each of the four measured categories (called "indexes") of cognitive functioning, the conglomeration of which will yield a "Full Scale IQ" score. (*Id*. at 292-93). A standard score in any index of cognitive functioning is expected to range between 90 and 110. (*Id*. at 293). Regarding verbal comprehension and perceptual reasoning, Plaintiff scored 76 and 75 respectively, ranking her abilities in the bottom 5 percent. (*Id*. at 292). Regarding working memory and processing speed, Plaintiff scored 66 and 50 respectively, ranking her abilities in the "extremely low range," or below the bottom 0.1 percent of the population. (*Id*.).

Dr. Khalifeh also administered the WMS-IV, which measures different areas of memory. (*Id*.). Given that a scaled score of 90 or higher is indicative of average functioning, Plaintiff scored a 70 which was in the "borderline range," or if her abilities were to be ranked, Plaintiff's functioning would be in the bottom 2 percent. (*Id*. at 293). The third of the battery of cognitive ability tests administered was a trail making test (Trails A & B), which is a neuropsychological test of visual attention and task switching. (*Id*.). In this pair of tests Plaintiff again scored in the impaired range with regards to visual information processing (Trails A), as well as scoring in the impaired range in matters involving sequencing between numbers and letters (Trails B). (*Id*.). Likewise, Plaintiff's ranking as to visual attention and task switching was in the bottom 1 percent. (*Id*.).

The final test administered by Dr. Khalifeh was the Bender Visual Motor Gestalt Test (commonly known simply as the Bender-Gestalt test); this is a psychological test used to assess visual-motor functioning, certain developmental disorders, and certain neurological impairments. (*Id*.). Where standard scores of 90 or higher are indicative of an average level of functioning, Plaintiff scored an 82, which was indicative of moderately below-average visual-motor functioning. (*Id*.). Thus, Dr. Khalifeh determined that Plaintiff's "overall clinical presentation is that of an individual with borderline to impaired cognitive abilities," (*Id*. at 294).

*Physical Impairments:*

Plaintiff also alleges that she suffers from the following physical impairments: lumbar

3

1    spine degenerative disc disease with sciatica, bilateral shoulder tendonitis, and chronic obstructive

2    pulmonary disease. (Doc. 21 at 3-4; *see also* AR at 27).

### THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. (*See* AR at 25-34).

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR at 27).

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered the following severe impairments: schizoaffective disorder, lumbar spine degenerative disc disease with sciatica, bilateral shoulder tendonitis, and chronic obstructive pulmonary disease. (AR at 27).

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the

burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR at 27-28). Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with several physical and environmental limitations. (AR at 28-32).

At Step Four, the ALJ determined that Plaintiff has no past relevant work and that she has not engaged in substantial gainful activity during the past 15 years. (AR at 32).

At Step Five, the ALJ concluded that based on the testimony of the VE, and the ALJ's formulation of the RFC, that Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy; and thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 27, 2012, through the date of the decision. (AR at 32-33).

**ISSUESS PRESENTED**

Plaintiff presents two issues for this court's review of the ALJ's decision. The first assigns error to the ALJ for failing to consider Listing 12.05C, and for failing to develop the record as to Plaintiff's cognitive impairments. The second issue assigns error to the ALJ for failing to reopen Plaintiff's previous 2012 claim, asserting that failure to do so was error because Plaintiff proceeded without representation which was exacerbated by her cognitive impairments.

**DISCUSSION**

In her first issue, Plaintiff contends that the ALJ erred at Step Three by failing to consider Listing 12.05C, and at Step Two by failing to develop the record as to Plaintiff's cognitive impairments. As stated above, following the sequential evaluation process, after making a Step Two determination about the medical severity of one or more impairments, the ALJ proceeds to Step Three where the claimant's impairments are compared to those listed in appendix 1 to subpart P of part 404. If the claimant is unable to bear the burden of showing that her impairments meet or equal an impairment in the listing, the ALJ assesses and formulates the claimant's RFC and

5

proceeds to Step Four. Because the court finds error at Step Two, warranting remand, the court does not find it necessary to address Plaintiff's arguments pertaining to the ALJ's Step Three analysis, or Plaintiff's arguments pertaining to the failure to reopen one of Plaintiff's prior applications.[1]

Plaintiff argues that the ALJ decision failed to evaluate, or even mention, the above-described evidence of her cognitive impairments in its Step Two analysis, failing to characterize the impairments as either severe or non-severe. (Doc. 21 at 3). Defendant responds by noting that Plaintiff "testified eloquently" at the hearing, rendering "detailed testimony," and "[a]t no time . . . mak[ing] any representation that she was developmentally disabled nor is anything in her testimony consistent with such a diagnosis." (Doc. 28 at 2). Defendant also suggests, without citation to any authority, that attaining an associate degree is "a feat that is utterly inconsistent with her current allegation that she is mentally retarded no matter how long it took her to earn the degree." (*Id*. at 4, 5). Defendant, however, does cite to a number of entries in the medical record to support the contention that "[n]o state agency expert who reviewed Plaintiff's records came to the conclusion that she was intellectually disabled – or even that she had borderline intellectual functioning." (*Id*. at 5) (citing AR at 78, 92-94, 97-99, 108-10, 112-14).

Not having mentioned Dr. Khalifeh (a state agency expert) in the previous contention, Defendant next suggests that "Dr. Khalifeh's own report refutes any conclusion that Plaintiff is intellectually disabled," presumably because the report contained notations to the extent that Plaintiff's "vocabulary and grammar were fair," or because the report noted that Plaintiff was "independent in self-care, drove and took public transportation." (Doc. 28 at 4-5). Plaintiff simply replies that Defendant's arguments constitute its "time-honored" attempt at *post hoc*

---

[1] In the course of Issue-2, Plaintiff also argues: that it was error for the ALJ not to have determined if Plaintiff received and understood correspondence regarding legal representation; and further, that the ALJ was obligated to explain the availability of free legal services and contingency representation. (Doc. 21 at 7-8). Defendant's only response to this contention appears to be that Plaintiff was lucid at the hearing and appeared to be able to get her point across. (Doc. 28 at 7). On remand, the Commissioner is instructed to take care that the record is fully developed in this regard because, "where the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts . . .[this] duty is further heightened in cases involving mental impairments." *Ray v. Chater*, 934 F.Supp. 347, 349 (N.D. Cal. 1996) (internal citations and quotations omitted).

6

rationalizations of the ALJ's failure to perform the required Step Two analysis regarding cognitive impairments. (Doc. 29 at 2).

"An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.' S.S.R. No. 96–3(p) (1996)." *Webb*, 433 F.3d at 686. "An impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id*. (internal citation omitted) (emphasis in original). Step Two then, is "a *de minimis* screening device [used] to dispose of groundless claims." *Id*. at 687 (internal quotation omitted).

As mentioned above, Dr. Khalifeh, a state agency consultative examiner ("CE") found that Plaintiff's longitudinal history included childhood problems such as having to repeat several grades in elementary school, needing special education classes, and eventually completing a 2-year associate degree but taking in excess of 12 years to do so. (AR at 291). The CE found that Plaintiff's verbal comprehension and perceptual reasoning were ranked at the bottom 5 percent of the population. (*Id*. at 292). Plaintiff's abilities regarding working memory and processing speed were determined to be in the "extremely low range," or at the bottom 0.1 percent of the population. (*Id*.). Regarding various areas of memory, Plaintiff's functioning was in the "borderline range," ranking in the bottom 2 percent of the population. (*Id*. at 293). Regarding visual attention and task switching, the CE found that Plaintiff was in the impaired range, ranking in the bottom 1 percent of the population. (*Id*.). The CE also found that Plaintiff was of moderately below-average visual-motor functioning; that Plaintiff's "overall clinical presentation is that of an individual with borderline to impaired cognitive abilities"; and that Plaintiff's full scale IQ score of 63 was in the "extremely low range" and that the score was ranked in the bottom 1 percent of the population. (*Id*. at 292-94).

Because the ALJ decision made no mention whatsoever of Plaintiff's above-described cognitive impairments in its Step Two analysis, the inescapable conclusion is that the impairments were not considered at all at Step Two. (*See* AR at 27). At Step Three, the ALJ decision made a single and indeterminate reference to "[t]he severity of claimant's *mental impairments*," without

7

any indication as to whether it meant to convey that only schizoaffective disorder (which the ALJ had found to be severe at Step Two) had been considered at Step Three, or whether Plaintiff's cognitive impairments had also been considered. (*See id*.). The only express mention made by the ALJ decision of Plaintiff's cognitive impairments appears after its Step Three analysis; while formulating the RFC, the ALJ decision briefly mentions cognitive impairments in the context of finding that Plaintiff would have difficulty only with complex tasks. (AR at 31) (noting that Plaintiff's IQ score was in the "extremely low range.").

Defendant does not directly address the fact that the ALJ failed to address cognitive impairments at all under Step Two. (*See generally* Doc. 28). Instead, Defendant attempts to shift the inquiry by suggesting that Plaintiff "testified eloquently," or that she rendered "detailed testimony," or that (in the apparent opinion of counsel) attaining an associate degree is "a feat that is utterly inconsistent with her current allegation that she is mentally retarded no matter how long it took her to earn the degree." (*Id*. at 2, 4, 5). Defendant's arguments are without merit as they are logically unrelated to any possible justification for the ALJ's failure to consider clear evidence of cognitive impairments at Step Two. Testimony that may be urged after the fact to be found "eloquent" or "detailed" does not obviate the need for Step Two analysis for medical severity when there is substantial evidence of a cognitive impairment in the record.

Furthermore, Defendant's argument that attaining an associate degree automatically renders past, present, or future cognitive impairments impossible is notably not based on either citation to an expert opinion, or any other source. Instead, it appears that Defendant is asking this court to make such a pronouncement. The court declines the invitation, as it appears that such pronouncements would be better made by medical experts than lawyers or judges. Otherwise, Defendant offers various supplemental justifications, found elsewhere in the record, but not found in the ALJ decision, as part of Defendant's overarching effort to "refute[] any conclusion that Plaintiff is intellectually disabled." (*See* Doc. 28 at 2, 4-5). Defendant's efforts, however, are misguided because they are arguments in support of a particular *medical* conclusion, and which are non-responsive to a claim of *legal* error assigned to an ALJ's failure to engage in any Step Two analysis whatsoever regarding the findings of the state agency consultative examiner as to

8

Plaintiff's cognitive impairments. Thus, it is no answer to simply claim that "Plaintiff is not intellectually disabled."

The court finds that the ALJ's failure to discuss the evidence of cognitive impairments in making the Step Two determination was reversible error. While the ALJ is certainly able to reject evidence of record when making the Step Two determination, the ALJ must, at the very least, provide reasons for doing so. *See e.g. Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The ALJ may discount testimony from [a physician's assistant] if the ALJ gives reasons germane . . . for doing so" and "the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotations omitted). Here, the ALJ neither accepted nor rejected the cognitive impairments evidence at Step Two. The evidence was not considered at Step Two at all, but it appears that the evidence was considered in the formulation of the RFC.

The Commissioner attempts to avoid this shortcoming in the ALJ's decision and to focus the inquiry either on a different issue entirely, or on evidence elsewhere in the record offered as a *post hoc* justification for the ALJ's failure to render any Step Two finding regarding cognitive impairments. It is not for this court to evaluate the ignored evidence in the first instance, assign it weight and then reweigh it against the other evidence of record, or to provide any *post hoc* justification for the ALJ's failure to consider it at Step Two. Instead, this court is tasked with reviewing the ALJ's evaluation of that evidence. This is why the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). The evidence outlined above should have either been accepted by the ALJ, or specifically rejected with an explanation.

"[Thus,] [t]he ALJ's failure to address plaintiff's [cognitive impairments] at Step Two indicates that the ALJ may not have accounted for all of plaintiff's impairments during subsequent steps of the sequential evaluation process." *Richard v. Colvin*, No. C13-6055 RBL, 2015 WL 2085610, at *4 (W.D. Wash. May 5, 2015). The court finds, therefore, that it cannot resolve the additional issues raised by Plaintiff until the error in the ALJ's Step Two analysis is corrected.

9

*See Haverlock v. Colvin*, No. 2:12-CV-2393-DAD, 2014 WL 670202, at *5 (E.D. Cal. Feb. 20, 2014) ("In light of the remand required by the ALJ's error at Step Two, the court need not address plaintiff's remaining claims."). Accordingly, the case must be remanded for further proceedings.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's motion for summary judgment, and REMANDS this matter for further proceedings in accordance with this Order.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: February 7, 2018.

ROBERT M ILLMAN
United States Magistrate Judge