UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| KELLY MARIE CLOVER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 16-cv-06565-RMI<br><br>**ORDER ON DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT**<br><br>Re: Dkt. No. 35 |

Pending before the court is Defendant's Motion, filed pursuant to Fed. R. Civ. P. 59(e), to alter or amend the final order and judgment previously entered in this case. (Doc. 35).[1] For the reasons that follow, the court will deny Defendant's Motion.

**INTRODUCTION**

On February 7, 2018, the court entered its Order (hereafter, "the Order") granting Plaintiff's motion for summary judgment and denying Defendant's cross-motion for summary judgment, while remanding the case to the Commissioner for further proceedings. (Doc. 31). Judgment was entered in accordance with the Order on the same day. (Doc. 32). In ruling on the summary judgment motions, the court noted that Plaintiff had argued that the ALJ erred at Step Three by failing to consider Listing 12.05C (Intellectual Disability), and at Step Two by failing to develop the record as to Plaintiff's cognitive dysfunction. (Doc. 31 at 5). Having found that the ALJ's failure to address the medical evidence of Plaintiff's cognitive dysfunction at Step Two was reversible error, the case was remanded for further proceedings. (*Id*. at 9-10).

---

[1] Defendant's Pleading is mistakenly captioned as a "Memorandum in Opposition to Plaintiff's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e)."

On March 3, 2018, Defendant filed the instant Motion and argued that the Order contained "manifest errors of law and fact upon which it based the judgment." (Doc. 35 at 2). Thereafter, due to counsel's health issues, the court granted two stipulations for extra time for Plaintiff to file a response. The second of which extended the time for the filing of Plaintiff's responsive brief to May 16, 2018. (Docs. 37, 39). In April of 2018, Plaintiff's counsel untimely passed away, and the process of transitioning his law practice and client files was initiated.

**DISCUSSION**

Defendant's Motion begins by taking issue with the notion that while "[t]he Order repeatedly asserts that the ALJ ignored substantial evidence that Plaintiff had a cognitive impairment," that no such impairment was identified by the Order or by the record. (Doc. 35 at 2). Defendant also suggests that the Step Two determination "involves a number of statutory and regulatory standards that the Order does not acknowledge or appear to comprehend." (*Id*.). In essence, Defendant suggests that the court "mischaracterizes and improperly reevaluates medical evidence that actually supports the relevant findings in the ALJ's decision." (*Id*.).

Defendant argues that a "deficit[] in cognitive functioning is not a medically determinable impairment," and that "[a]t best, a deficit in cognitive functioning would be a limitation." (*Id*. at 3) (internal quotation marks omitted). Thus, Defendant contends that "[t]he record does not contain any evidence from an acceptable medical source indicating that Plaintiff had an impairment related to a cognitive disorder." (*Id*.). Defendant also takes issue with the Order's reliance on the mental status findings and prognosis outlined in the report of Dr. Anne Khalifeh, Psy.D., a clinical psychologist and state agency consultative examiner. (*Id*. at 4) (suggesting that "Dr. Khalifeh did not diagnose any medical condition related to Plaintiff's cognitive abilities."). Defendant submits that the court "reinterprets" Dr. Khalifeh's findings, and that "the Order improperly elevates Dr. Khalifeh's observations and/or test results – rather than her conclusions – to the status of a medically determinable impairment." (*Id*.). Defendant also contends that "none of Dr. Khalifeh's conclusions included a 'cognitive impairment.'" (*Id*. at 5). In short, Defendant claims that "the Order misunderstands what an impairment is under the regulatory disability framework, misunderstands and then mischaracterizes the evidence it relies upon to find ALJ error, and

2

misapprehends the nature of Plaintiff's primary argument and the Commissioner's response to that argument." (*Id.* at 6).

Notwithstanding the strident manner in which they have been presented, the court is unpersuaded by Defendant's arguments. Defendant suggests that diminished cognitive functioning is not a medically determinable impairment, and that such a "deficit" would be a "limitation" and not an "impairment." For this proposition, Defendant cites only to a seemingly unrelated regulatory provision that merely explains that impairments and related symptoms may cause physical or mental limitations that may affect what one could do in a work setting. (Doc. 35 at 3) (citing 20 C.F.R. § 416.945). On the other hand, the Oxford English Dictionary defines "impairment" as a deterioration, an injurious lessening or weakening.[2] In harmony with this common understanding of the word, the Social Security Act defines it identically in Titles II and XVI as such: "[a] physical or mental impairment is one that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). In the capital case context, the Supreme Court's use of the term, "cognitive impairment," in discussing that component of the intellectual disability analysis is the same. *See e.g.*, *Sears v. Upton*, 561 U.S. 945, 950 (2010) (". . . Sears suffers from substantial cognitive impairment."); *Elmore v. Holbrook*, 137 S. Ct. 3, 4 (2016) ("They conducted neuropsychological tests that revealed mild to moderate cognitive impairments")*.*; *see also Penry v. Lynaugh*, 492 U.S. 302, 336-337 (1989).

Additionally, there is a wealth of authority undercutting Defendant's unusual argument that sub-normal intellectual functioning is merely a limitation rather than an impairment under the Social Security Act. In numerous cases, other ALJs, as well as federal courts, have found claimants to suffer from a mild, moderate, or severe cognitive impairment at Step Two on the basis of valid IQ scores.[3] Accordingly, the court finds Defendant's argument in this regard to be

---

[2] http://www.oed.com/view/Entry/92055?redirectedFrom=impairment#eid

[3] *See e.g.*, *Johnson v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 43834, *5, 2017 WL 1130024 (W.D. Mich. 2017) ("At the second step, the ALJ found that plaintiff had severe impairments of: mild cognitive impairment with low IQ; ADHD, combined type; history of cannabis abuse; type II diabetes mellitus; obesity; status-post surgery for benign retroperitoneal tumor with residual

3

meritless.

---

dysesthesia of the left leg; and tobacco abuse."); *Smith v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 28837, *16 (E.D. Mich. 2017) ("At Step Two, the ALJ found that Smith has the severe impairment of borderline intellectual functioning."); *Douglas v. Astrue*, 2009 U.S. Dist. LEXIS 9863, *15 n.10, 2009 WL 330961 (C.D. Cal. 2009) ("The applicable mean, or "norm," is 100, and the standard deviation is 15. 20 C.F.R. Part 404, Appendix 1, Subpart P § 112.00 Therefore, a valid IQ test score of 70 or below constitutes a marked cognitive impairment."); *Knoll ex rel. E.G.K. v. Berryhill*, 2018 U.S. Dist. LEXIS 108358, *15 (M.D. Pa. 2018) ("The Commissioner further avers that E.G.K.'s full scale IQ score demonstrates that he had borderline intellectual functioning, instead of a more severe cognitive impairment."); *Winnik v. Chater*, 1998 U.S. Dist. LEXIS 4094, *9 (S.D.N.Y. 1998) ("Therefore, to the extent that the record suggests that Samantha suffered some cognitive impairment, her near-average IQ is of little consequence. Both the ALJ and I relied on this fact."); *Kimble v. Berryhill*, 2018 U.S. Dist. LEXIS 109492, *2 (N.D. Cal. 2018) ("The ALJ agreed that Kimble had borderline intellectual functioning and an IQ of 80, cognitive impairment in memory, attention and concentration, and visuospatial constructional ability, depression, and marked difficulties in social functioning."); *Cournoyer v. Colvin*, 2016 U.S. Dist. LEXIS 33906, *6 (S.D.S.D. 2016) ("The ALJ found Mr. Cournoyer's alleged cognitive impairment was not a medically determinable impairment because the record did not contain a valid IQ score, cognitive testing, or treatment notes from claimant's physicians showing concern of a cognitive impairment."); *Angelo v. Astrue*, 2012 U.S. Dist. LEXIS 106776, *9 (S.D. Oh. 2012) ("In her decision, however, the administrative law judge characterized plaintiff's cognitive impairment as borderline intellectual functioning. [] Although she recognized the apparently qualifying IQ scores on the tests administered by Dr. Wolfgang and Mr. Spindler, the administrative law judge found no evidence of an onset of intellectual impairment or adaptive deficits before age 22."); *Robles v. Colvin*, 2014 U.S. Dist. LEXIS 73142, *15 (W.D. Okla. 2014) ("Based on the foregoing analysis, the Court finds that the ALJ erred as a matter of law at step two in failing to expressly acknowledge Plaintiff's IQ score of 70 and determine whether the score was valid and, therefore, established a severe cognitive impairment."); *Stormo v. Barnhart*, 377 F.3d 801, 808 (8th Cir. 2004) ("A significant drop in IQ may indicate cognitive impairment, but its alleged severity must be supported by other information in the record about the claimant's ability to function.") (citing *Holland v. Apfel*, 153 F.3d 620, 622 (8th Cir. 1998)); *McGee v. Astrue*, 291 Fed. Appx. 783, 788, 2008 U.S. App. LEXIS 19154, *15 (8th Cir. 2008) ("Absent a valid IQ score, Ms. McGee cannot show a medically determinable cognitive impairment requiring further analysis. Nor can she show an impairment which meets the Listing 12.05C criteria."); *Ondracek v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 24979, *4, 2017 WL 2017 (E.D. Cal. 2017) ("At step two, the ALJ found that Plaintiff 'has the following severe impairments: degenerative disc disease, anxiety disorder, substance abuse disorder, learning disorder, and cognitive disorder.'"); *Wheeler v. Berryhill*, 2017 U.S. Dist. LEXIS 206680, *3, 2017 WL 6398639 (W.D. Wash. 2017) ("Step two: Mr. Wheeler's seizures, cognitive disorder, learning disorder, borderline intellectual functioning, and alcohol abuse are severe impairments."); *Rogal v. Astrue*, 2012 U.S. Dist. LEXIS 186019, *2, 2012 WL 7141260 (W.D. Wash. 2012) ("Step two: Mr. Rogal had the following severe impairments: degenerative disc disease of the lumbar spine with lumbar spondylosis, chronic fatigue, and cognitive disorder."); *Baker v. Colvin*, 2016 U.S. Dist. LEXIS 20394, *7-8, 2016 WL 698156 (W.D. Ark. 2016) ("The Commissioner responds that Plaintiff failed to meet his burden to establish any additional impairment, arguing that an IQ score is only one factor that an ALJ may consider in determining whether a claimant has a severe cognitive impairment; and, that if there is other evidence in the record that is inconsistent with a low IQ score, such as daily activities or prior work history, an ALJ may discount the IQ score and find no severe cognitive impairment."); and, *Harty v. Colvin*, 2014 U.S. Dist. LEXIS 58485, *12, 202 Soc. Sec. Rep. Service 110, 2014 WL 1679799 (D. Or. 2014) ("The Court concludes on this record that the ALJ erred when she did not address Plaintiff's alleged cognitive impairment because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.").

4

Defendant also contends that Dr. Khalifeh did not diagnose any medical condition related to Plaintiff's cognitive abilities. However, this argument has no basis in the record as Dr. Khalifeh's report unmistakably sates that, "the following diagnostic and clinical impressions and disability considerations are offered. The overall clinical presentation is that of an individual with borderline to impaired cognitive abilities." (Doc. 13, Administrative Record "AR" at 294). Describing the results from the battery of IQ testing she administered, Dr. Khalifeh noted that Plaintiff's Full Scale IQ score of 63 placed her within "the extremely low range of cognitive functioning." (*Id*. at 292). Thus, there was substantial evidence in the record that Plaintiff operates in the "extreme low range of cognitive functioning," and it was error for the ALJ to fail to address this evidence at Step Two, such that the evidence and record could then have been properly developed for a Step Three determination as to meeting or equaling the intellectual disability listing.

Defendant's suggestion that this court "reinterprets Dr. Khalifeh's findings" is wholly without merit. IQ testing was performed by a trained professional, the validity of the results of which has never been questioned, and the ALJ failed to even address this evidence of serious cognitive dysfunction at Step Two. Thus, Defendant has failed to make any showing that the court has "misunderstood the evidence." Nor is the court persuaded by Defendant's suggestion that the court "misunderstands what an impairment is under the regulatory disability framework." Based on the cases cited above, if there is any such "misunderstanding," it is widespread indeed. Furthermore, the court finds little value in addressing or discussing Defendant's suggestion that the court has not only misunderstood the evidence in this case, but that the court has mischaracterized it. Instead, the court will simply remind counsel to avoid using intemperate language in pleadings.

As to Defendant's suggestion that the court has misapprehended Plaintiff's "primary" argument, the court is likewise unpersuaded. While Plaintiff argued that the ALJ committed harmful legal error at Step Three by failing to consider the intellectual disability listing (Listing 12.05C), Plaintiff also argued that "[t]he [ALJ] decision did not evaluate deficits in cognitive functioning as either severe or nonsevere impairments." (Doc. 21 at 3). Plaintiff has maintained

5

that the ALJ failed to adequately develop the record as to her cognitive dysfunction at Step Two, such that it could be determined at Step Three whether or not she met or equaled the listing for intellectual disability. (*Id*. at 5-7). Thus, Defendant is incorrect when arguing that Plaintiff never took exception to the ALJ's error at Step Two as Plaintiff's pleading in this court unambiguously took issue with the ALJ's failure to "evaluate deficits in cognitive functioning as either severe or nonsevere impairments" – this is a clear assignment of Step Two error and Defendant's contention to the contrary is meritless. Additionally, it should be noted that in articulating the suggestion that Plaintiff never even raised a Step Two issue, Defendant uses interesting terminology. Despite spending much energy attempting to make the case that a deficit in cognitive functioning is not so much of an "impairment" as it is a "limitation," Defendant's contention that a Step Two issue was never raised shows the flaw in this logic. Defendant submits that "Plaintiff's primary argument, however, was *not* that the ALJ erred at step two, but that, at step three, she was so cognitively impaired that she was presumptively disabled by mental retardation (intellectual disability)." (Doc. 35 at 6) (emphasis in original). Putting aside Defendant's factually incorrect statement that Plaintiff never raised a Step Two issue, Defendant's use of the term "cognitively impaired" in the same document that argues that deficits in cognitive functioning are not impairments but limitations is curious. Either a deficit in cognitive functioning is an impairment, or it is not, Defendant cannot have it both ways. Of course, as discussed above, it is.

The Step Three evaluation for intellectual disability requires a showing of "(1) Significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of impairment before age 22; (2) A valid verbal, performance, or full scale IQ score of 60 to 70; and (3) A physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C. Thus, as the above-cited cases make clear, the Step Two precursor to a Step Three evaluation for intellectual disability is an evaluation for deficits in cognitive functioning, or put another way, an evaluation of any substantial evidence of a claimant's cognitive dysfunction. Notwithstanding Defendant couching Plaintiff's "primary" argument as focusing on the ALJ's failure to consider the intellectual

6

disability listing at Step Three, Plaintiff clearly also took exception to the ALJ's failure to consider her sub-normal intellectual functioning and develop the record at Step Two.

## **CONCLUSION**

Accordingly, Defendant's Motion to Alter or Amend (Doc. 35) the judgment in this case is DENIED.

**IT IS SO ORDERED.**

Dated: October 15, 2018.

ROBERT M. ILLMAN
United States Magistrate Judge